UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

| | |
|---|---|
| SUSAN ROLLINS, Individually, in Her Own Right and as Administrator of the Estate of KEVIN J. ROLLINS, Deceased, | Docket No. 22-CV-808 (GRB)(ARL) |
| Plaintiff, | |
| -against- | |
| COUNTY OF NASSAU, NASSAU COUNTY CORRECTIONAL CENTER, NASSAU COUNTY SHERIFF'S DEPARTMENT, VERA FLUDD, Individually and as former Sheriff of Nassau County, NASSAU UNIVERSITY MEDICAL CENTER, NASSAU HEALTH CARE CORPORATION, a/k/a NUHEALTH SYSTEM, NASSAU COUNTY CORRECTIONS OFFICERS "JOHN DOES 1-10," in their Individual and Official Capacities (whose names are fictitious but intended to represent and designate various presently unidentified Nassau County Corrections Officers who had responsibility for the care, health and safety of the Deceased), and NASSAU UNIVERSITY MEDICAL CENTER and NASSAU HEALTH CARE CORPORATION EMPLOYEES and AGENTS "JOHN and JANE DOES 11-20," in their Individual and Official Capacities (whose names are fictitious but intended to represent and designate various presently unidentified Nassau University Medical Center and Nassau Health Care Corporation employees and agents who had responsibility for the medical care, health care and safety of the Deceased), | DECLARATION OF JAMES A. PASCARELLA IN OPPOSITION |
| Defendants. | |

_____X

**James A. Pascarella**, an attorney duly admitted to practice in the courts of this state and in the United States District Court for the Eastern District of New York, declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.  I am a member of the Pascarella Law Firm, PLLC, attorneys for the plaintiff, and I am fully familiar with the facts and circumstances set forth herein.

2. This declaration is submitted in opposition to the motion to dismiss, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on behalf of defendants County of Nassau and Vera Fludd (collectively and alternatively, "County Defendants").

3. The underlying action arises out of the December 28, 2018 death of Kevin J. Rollins, a 28-year-old young man, while he was an inmate pre-trial detainee in the care and custody of the defendants at the Nassau County Correctional Center ("NCCC").

4. It is noted that co-defendants Nassau University Medical Center and Nassau Health Care Corporation have filed their Verified Answer to plaintiff's Verified Complaint.

5. The said Verified Complaint contains nine (9) claims alleging violation of federal laws and the Constitution of the United States and three (3) claims made pursuant to the laws of New York State (the Tenth, Eleventh and Twelfth Claims). Susan Rollins, the Administrator of the decedent's estate, brings the within lawsuit in her capacity as the duly appointed representative of the said estate and, also, individually, in her own right.

6. The Verified Complaint has been annexed to the County Defendants' Rule 12(b)(6) motion as Exhibit A, and, so, there is no need to include the said complaint with plaintiff's opposition papers.

7. Prior to serving the within Rule 12(b)(6) motion, the County Defendants, pursuant to this Court's Individual Practice Rules, filed a pre-motion letter, dated April 22, 2022, setting out, essentially, their bases for the intended motion. In accordance with the Court's Rules, plaintiff filed a two-page letter response, dated May 11, 2022, annexing as exhibits thereto the Final Report of New York State Commission of Correction ("NYSCOC"), dated January 5, 2021, and the Nassau County Medical Examiner's Report of Autopsy (dated/signed April 3,

2019). Each of these reports was an integral part of the Verified Complaint and incorporated therein, plaintiff having relied on those documents' terms, conclusions and effects.

8. The Medical Examiner's Report shows that the decedent died of fentanyl poisoning ("acute fentanyl intoxication"). More specifically, the condition was described as acute diffuse anoxic-ischemic encephalopathy, including cerebral edema with brain herniations.[1]

9. As set out in the NYSCOC's Final Report (which is directed and was sent to the County Sheriff for review and response and to whom any NYSCOC recommendations are made), the NYSCOC's Medical Review Board found, among other findings, that the NCCC failed to respond to a pattern of drug-related contraband within Building E (where decedent was housed at the time) during the month of December by not conducting thorough housings searches; that the facility policies CD 05-03-02 (Random Daily Searches) and CD 05-03-11 (Housing Area Searches) were inadequate; that the said policies failed to make clear what indicators would necessitate a full housing area search outside routine duties; and that the policies failed to identify that contraband found during a random search is an indication that a full housing search should be conducted. *See, too,* the Verified Complaint, Defendants' Exhibit A, at ¶¶ 199-200. (It is to be noted that, in November 2018, two inmates overdosed on illegal drugs, and on December 15, 17, 20, 24, and 26, 2018 various incidents involving contraband drugs occurred in the building unit which housed the decedent. There were no responsive

---

[1] It is pointed out that it can be said that the claims asserted in the Verified Complaint (including, arguably, a state wrongful death claim) accrued no earlier than April 3, 2019, the date of the Medical Examiner's Report. That is when it first would have become known to plaintiff that the actual cause of her son's death while incarcerated at the NCCC was a fentanyl overdose.

Interestingly, if CPLR 214-c applies in this case due to the decedent's "exposure" to fentanyl, it could be argued that a straight 3-year statute of limitations applies—measured from the date of discovery.

facility-wide shutdowns and searches for contraband drugs on those occasions. Defendants' Exhibit A, at ¶¶ 193-197).

10. The NYSCOC Final Report indicated, as well, that, on December 27, 2018, at 8:40 a.m., an inmate reported to a Corrections Officer ("CO") that the decedent "did not look well," that the CO reported this to his immediate superior CO, a corporal, and the first CO then proceeded to the area of the decedent's cell, where he found decedent on the floor. This CO notified his aforesaid corporal, who came to the area and began "an initial assessment." Eventually, a CO sergeant arrived, and, subsequently, medical personnel came to the area to attend to the decedent.

The corrections officers did not administer Narcan to the decedent. Upon information and belief, the said Narcan should have been available in a drug overdose treatment kit, which should have been available on the floor, and should have been administered by a CO as part of the protocol in place for such incidents. Narcan was not administered until the medical personnel who arrived administered it.

It is noted, too, that the NYSCOC Medical Review Board found that the NCCC health staff failed to adequately document their resuscitation efforts of the decedent due to the exclusion of times that the interventions were given. Defendants' Exhibit A, at ¶¶ 201-204, 206-210.

11. Importantly, the NYSCOC required of the Nassau County Sheriff that "the sheriff review and revise facility policies CD 05-03-02 (Random Daily Searches) and CD 05-03-11 (Housing Area Searches) to include indicators that would prompt a housing unit search to be performed outside of the routine biannual search. Housing unit searches should be conducted when there is evidence of contraband within the facility such as overdose." Defendants' Exhibit A, at ¶ 211.

12. It is significant to set out, as well, that the decedent was a known drug addict whose bail relating to drug charges was revoked by the Nassau County Drug Court because of his continued use of drugs, and that that court recommended that decedent be placed in the NCCC's Drug Alcohol Rehabilitation Treatment ("DART") program. Decedent entered the NCCC on April 3, 2018, and participated in the DART program from April 12, 2018 until a time in July 2018, when, for unknown reasons and without a hearing, he was removed from DART by the NCCC and placed in a housing unit in the general population. *See,* more specifically, Defendants' Exhibit A, at ¶¶ 58-63, 178-186.

13. It can be said that there was a systemic failure to reasonably medically care for and to reasonably protect Kevin J. Rollins.

14. This Court set a July 11, 2022 pre-motion conference date to discuss the anticipated 12(b)(6) motion, and that conference was held with counsel for all parties attending virtually, by telephone.

15. By their pre-motion letter, among other things, the County Defendants sought dismissal of the named defendants who were administrative arms of Nassau County, to wit: the Nassau County Sheriff's Department and the NCCC. Similarly, the County Defendants sought dismissal of Sheriff Fludd named in her official capacity as being duplicative of the claims against Nassau County. At the July 11 conference, plaintiff consented to dismissals as to these parties. At the same time, plaintiff also consented to the County Defendants' pre-motion letter request to dismiss the Twelfth Claim (a state law claim sounding in negligent and intentional infliction of emotional distress) of the Verified Complaint.

16. By the aforesaid pre-motion letter, the County Defendants also sought dismissal of pendent state law Tenth and Eleventh Claims, which plaintiff opposed, voicing such opposition at the said conference.

17. Finally, by the same pre-motion letter, and as to plaintiff's federal claims, the County Defendants (a) argued that Susan Rollins lacked standing, individually, to bring what they alleged to be "derivative § 1983 claims" and (b) argued that defendant Fludd must be dismissed from the action because plaintiff's allegations against Fludd do not "… show that Fludd committed a Constitutional violation by her own conduct."[2]

18. It is noteworthy that the County Defendants, by their pre-motion letter, specifically set forth that, "For the sake of clarity, the County *does not move to dismiss* the federal claims against the County on statute of limitations ground, but reserves the right to do so on summary judgment … [should certain conditions come to pass]." (Emphasis supplied). Moreover, the County Defendants continued, adding, in the final paragraph of their letter, "As such, the County *is not moving to dismiss the* First, Second, Third, Sixth, Eighth and *Ninth* Causes of Action (emphasis added) appearing to assert a 14th Amendment *Monell* claim against the County. The remaining federal claims (Fourth, Fifth and Seventh Causes of Action) are targeted at the co-defendants."

19. In keeping with the above, at the July 11 conference, the County Defendants did not seek to dismiss the First, Second, Third, Sixth, Eighth or Ninth Claims of the Verified Complaint.

---

[2] The Court made certain oral rulings at the conference, including dismissal as to Fludd in her individual capacity with regard to the applicable federal claims, with a proviso being that the federal claims could be reinstituted as to Fludd if, as a result of the discovery process, a sufficient degree of her personal involvement can be shown.

20. Surprisingly, however, in their written Rule 12(b)(6) motion served upon plaintiff's counsel, the County Defendants now seek to dismiss plaintiff's Ninth Claim, a § 1983 claim, "… for failure to state a claim upon which relief may be granted, on the ground that the plaintiff has not properly pleaded a survivorship claim for recovery of damages for the decedent's pain and suffering[.]" *See,* Declaration of Adam I. Kleinberg, at p. 2, ¶ 1; *see, also,* County Defendants' Memorandum of Law In Support, at p. 6.

21. While the Court, at the July 11 conference, directed that certain of the issues discussed be briefed, it is submitted that plaintiff's Ninth Claim was not one of the matters to be briefed. Further, the Ninth claim was not addressed at the conference, and, as made clear by defendants' pre-motion letter, was not an issue to be raised in the 12(b)(6) motion. It is further submitted, therefore, that it would be inappropriate to now brief the issue of dismissal of the Ninth Claim based on what appears to be the County Defendants' initiative.

22. It is pointed out, however, that, during the course of the July 11 conference, in referring to the Tenth Claim (again, one of the pendent state claims), I offered that it could be viewed as a survivorship claim as well as a wrongful death claim, for, among other reasons, it alleges pain and suffering and punitive damages. (In this regard, New York recognizes two distinct causes of action to recover damages for a person's death: survivorship and wrongful death. While a survivorship cause of action belongs to the estate of the decedent, including for his pain and suffering prior to death (Estates, Powers, and Trusts Law ("EPTL") § 11-3.2(b)), the wrongful death cause of action compensates those statutory distributees who have suffered pecuniary loss as a result of the decedent's death. (EPTL § 5-4.3)) .[3] This, as I recall, was

---

[3] During our July 11 discussion regarding wrongful death, I pointed out that, recently, both the New York State Senate and the Assembly passed the Grieving Families Act ("GFA"). The act passed almost unanimously in both houses of the state legislature and would amend New York's 175-year-old wrongful death statute (i.e. EPTL §§ 5-4.1, 5-4.3, 5-4.4 and 5-4.6), allowing decedent's close family members to recover for: grief or anguish caused by a

mentioned as part of the discussion regarding wrongful death and survivorship having different statutes of limitations periods that could apply to individual defendants set out in the caption of the case, including Fludd.

23.  It is offered that in situations where the application of a state law could undermine § 1983's twin goals of compensation and deterrence, courts will not apply that law.  Deference to a survival statute that would bar or limit the remedies available under § 1983 for unconstitutional conduct that causes death is not required by § 1988(a).  This is what led to the Ninth Claim.

24.  The issues that the Court directed to be briefed related to:  Claim 11 (a pendent state cause of action for medical negligence), as to whether defendant Fludd "could be on the hook" under a *respondeat superior* theory; and Susan Rollins' standing to bring a derivative § 1983 claim, an issue which has yet to be decided by the Second Circuit Court of Appeals.

**Wherefore,** plaintiff respectfully requests that the County Defendants' Rule 12(b)(6) motion be denied in all respects.

Dated:  Mineola, New York
October 10, 2022

_____/S/_____
James A. Pascarella (JP 4952)
The Pascarella Lawe Firm, PLLC
*Attorneys for Plaintiff*
1551 Franklin Avenue
 Mineola, New York 11501
 (516) 742-1134
 Email:  jamesapascarella@pascarellalawfirm.com

TO:  All counsel via ECF

---

decedent's death; any disorder caused by such grief or anguish; and loss of love, society, protection, comfort, companionship, nurture, guidance, counsel, advice, training, education and consortium resulting from decedent's death.  The definition of close family members would include spouses, domestic partners, issue (children, grandchildren, great-grandchildren), parents, grandparents, stepparents and siblings.  Furthermore, the statute of limitations would be extended to three years and six months.  Additionally, the new law would take effect immediately and would be applicable retroactively, thereby impacting wrongful death actions currently pending.  The GFA awaits Governor Hochul's signature.